UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD MORRIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RESIDENTIAL CREDIT SOLUTIONS, INC, et al.,<br><br>　　　　　Defendant. | No.  2:14-cv-01460-TLN-CKD<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant Residential Credit Solutions, Inc.'s ("Defendant" or "RCS") Motion to Dismiss (ECF No. 4) and Plaintiff Chad Morris's ("Plaintiff") Motion for Preliminary Injunction (ECF No. 17).  Both parties have filed oppositions to the respective motions and replies to the oppositions.  (ECF Nos. 18, 21–23.)  The Court has carefully considered the briefing submitted by both parties.  For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 4) is GRANTED IN PART and DENIED IN PART.  Plaintiff's Motion for Preliminary Injunction (ECF No. 17) is hereby GRANTED.

I.　　**FACTUAL AND PROCEDURAL BACKGROUND**

On or about August 16, 2005, Plaintiff purchased the property located at 21 Riverscape Court, in Sacramento, California. (Compl., ECF No. 1-2 at ¶ 6.)  The purchase price of the property was $519,000. (ECF No. 1-2 at ¶ 6.)  Plaintiff invested $51,900 as a down payment on

the property and took out a first mortgage for $415,200 with Countrywide Financial.  (ECF No. 1-2 at ¶ 6.)  Additionally, Plaintiff took out a second mortgage for $51,900 with Countrywide Financial.  (ECF No. 1-2 at ¶ 6.)  Plaintiff alleges that he made complete and timely mortgage payments each month for the first 7 years of his mortgages.  (ECF No. 1-2 at ¶ 7.)

In 2008, Countrywide Financial was purchased by Bank of America ("BOA") and Plaintiff's mortgage and deed of trust were transferred to BOA.  (ECF No. 1-2 at ¶ 9.)  Throughout this period, Plaintiff continued to make complete and timely mortgage payments.  (ECF No. 1-2 at ¶ 9.)  Throughout 2011 and 2012, Plaintiff attempted to receive a loan modification from BOA, but was unable to receive the required information to complete the process.  (ECF No. 1-2 at ¶ 10.)  In 2013, Plaintiff fell behind on his mortgage payments.  (ECF No. 1-2 at ¶ 11.)  After falling behind on his mortgage payments, Plaintiff again began the loan modification process with BOA.  (ECF No. 1-2 at ¶ 11.)

After months of negotiating a loan modification with BOA, on or about May 28 2013, Plaintiff received a letter from BOA stating that RCS had taken over the servicing rights on Plaintiff's home loan.  (ECF No. 1-2 at ¶ 12.)  On or about July 16, 2013, Plaintiff received a letter from RCS stating RCS's loan modification process and indicating that Plaintiff would have to start over in his search for a home loan modification.  (ECF No. 1-2 at ¶ 13.)  From July of 2013 through February of 2014, Plaintiff attempted to acquire a home loan modification from RCS.  (ECF No. 1-2 at ¶ 14.)  In doing so, Plaintiff was required to provide the same information several times to RCS.  (ECF No. 1-2 at ¶ 14.)  Plaintiff alleges that once he provided the information RCS would claim that the information that they had already received was out of date and needed to be updated.  (ECF No. 1-2 at ¶ 14.)  Plaintiff would then send all the information requested, and RCS would state that it needed additional information that was not previously requested.  (ECF No. 1-2 at ¶ 14.)  Once this was provided RCS would once again assert that the information previously provided was out of date and needed to be resent.  (ECF No. 1-2 at ¶ 14.)  During this period, Plaintiff had multiple points of contact.  (ECF No. 1-2 at ¶ 14.)  Each new point of contact was unfamiliar with Plaintiff's loan and his numerous attempts to achieve a loan modification.  (ECF No. 1-2 at ¶ 14.)

On or about February 26, 2014, Plaintiff received a notice of default from RCS. (ECF No. 1-2 at ¶ 15.) Plaintiff immediately contacted RCS to discuss this matter. (ECF No. 1-2 at ¶ 15.) Once again, Plaintiff was given a new point of contact and was told that the notice of default was simply a formality and as long as Plaintiff continued with the loan modification process no further action would be taken. (ECF No. 1-2 at ¶ 15.) Plaintiff continued to provide RCS all the information requested in hopes of achieving a loan modification. (ECF No. 1-2 at ¶ 15.) Each time Plaintiff sent information RCS would either state it needed new information or state that they already received information that was old and needed to be updated. (ECF No. 1-2 at ¶ 15.) At no point during Plaintiff's almost daily discussions with RCS was he informed that a foreclosure was being sought. (ECF No. 1-2 at ¶ 15.)

On May 28, 2014, Plaintiff received a notice of foreclosure at his residence. (ECF No. 1-2 at ¶ 16.) The date of sale was scheduled for June 18, 2014, at 2:00 pm. (ECF No. 1-2 at ¶ 16.) Plaintiff again contacted RCS. (ECF No. 1-2 at ¶ 16.) Once again, RCS stated that this was simply a procedural step and that they would continue to work on getting a loan modification for Plaintiff. (ECF No. 1-2 at ¶ 16.)

On June 4, 2014, Plaintiff filed a complaint for injunctive relief and damages alleging violations of California Civil Code sections 2923 and 2924, fraudulent mortgage practices and punitive damages. (ECF No. 1-2.) On June 10, 2014, Plaintiff sought an ex parte application for temporary restraining order and preliminary injunction in Sacramento County Superior Court. (ECF No. 1-3.) At the hearing Judge Raymond Cadei granted Plaintiffs temporary restraining order and set a hearing regarding a preliminary injunction. (ECF No. 1-4.) On June 18, 2014, Defendant removed this case to federal court and subsequently filed a motion to dismiss on June 25, 2014. (ECF No. 4.) Plaintiff filed a motion for preliminary injunction on July 21, 2014. (ECF No. 17.)

## II.   STANDARDS OF LAW

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556

3

U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to nudge his or her claims "across

the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

B.   Preliminary Injunctive Relief

The general standard for granting injunctive relief requires balancing a plaintiff's likelihood of success on the merits against the relative hardships to the parties. *Benda v. Grand Lodge Int'l Assoc. Machinest*, 584 F.2d 308, 315 (9th Cir. 1978). This balancing is a continuum, wherein the required showing of irreparable harm varies inversely with the probability of success. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). The Supreme Court clarified the proper standard for granting or denying a preliminary injunction, stating that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

5

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir. 1984) (quoting *William Inglis & Sons Baking Co., Inc. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975) (emphasis in original)). With these rules in mind, the Court turns to the present case.

### III. ANALYSIS

#### A. Defendant's Motion to Dismiss

As to Plaintiff's First Cause of Action for Injunctive Relief, Defendant asserts the following three arguments: (1) Plaintiff's claim for injunctive relief fails because injunctive relief is a remedy, not a cause of action; (2) Plaintiff has failed to allege any facts demonstrating that Defendant violated any provision of the Dodd-Frank Act; and (3) Plaintiff cannot allege any violation of section 2924.11. (ECF No. 4 at 6–9.)[1] As to Plaintiff's Second Cause of Action for Fraud, Defendant contends that Plaintiff has failed to allege his fraud claim with the required specificity under Federal Rule of Civil Procedure 9. (ECF No. 4 at 10.) The Court addresses each of Plaintiff's Causes of Action separately below.

##### i. *Plaintiff's First Cause of Action for Injunctive Relief*

Defendant first asserts that Plaintiff's claim for injunctive relief fails because injunctive relief is not considered to be a viable cause of action in California. (*See* ECF No. 4 at 6 (citing *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009) ("Injunctive relief is a remedy which must rely upon underlying claims. If plaintiff seeks injunctive relief, she should request it as part of her prayer for relief.")).) Defendant concludes that because injunctive relief is a remedy rather than a viable claim, Plaintiff's First Cause of

---

[1] The ECF page number citations contained within this Order correspond with the page numbers assigned to each document by the docketing system as printed on the top of each page filed.

Action for injunctive relief fails and should be dismissed with prejudice.

In Plaintiff's complaint, his first cause of action is entitled "Injunctive Relief"; however, under this heading Plaintiff alleges:

> RCS and BOA,[2] in violation of Consumer Financial Protection Bureau Act of 2010 (also California Civil Code §2924.11), has participated in "dual tracking" in managing Plaintiff's home loan and requested modification. Dual tracking is when the mortgage servicer is working with the mortgagee on acquiring a workout plan (track 1) while at the same time attempting to proceed with the foreclosure process (track 2). RCS and BOA continued to go through the foreclosure process by serving a notice of default, notice of foreclosure and notice of sale on Plaintiff despite actively managing a loss mitigation application.

(Compl., ECF No. 1-2 at ¶ 21.) Thus, although the cause of action is labeled "injunctive relief" it is clear that this Cause of Action is in fact for violations of the Consumer Financial Protection Bureau Act of 2010 and California Civil Code §2924.11 and that the remedy sought is injunctive relief. The Court is disinclined to dismiss this cause of action on a technicality and thus turns to Defendant's substantive arguments.

Next Defendant argues that Plaintiff has failed to allege any facts demonstrating that Defendant violated any provision of the Dodd-Frank Act (also known as Consumer Financial Protection Bureau Act of 2010). Specifically, Defendant asserts that Plaintiff has given no specificity as to what provision of the Dodd-Frank Act was violated. This Court agrees.

Dodd-Frank: Title X, is known as the Consumer Financial Protection Act of 2010 and establishes the Consumer Financial Protection Bureau (CFPB or Bureau) as an independent agency within the Board of Governors of the Federal Reserve System (Federal Reserve). *See* "Dodd-Frank Act," codified as 12 U.S.C.A. §§5301–5641 (West 2010). The CFPB regulates the offering and provision of consumer financial products and services under federal consumer financial laws. *See* 12 U.S.C.A. § 5512 (West 2010). Plaintiff's blanket statement above fails to apprise Defendant or this Court as to which provision it alleges Defendant has violated. Therefore, Plaintiff has not alleged sufficient facts to sustain a cause of action for violations of the Dodd Frank Act or Consumer Financial Protection Bureau Act of 2010, and the Court looks to

---

[2]   BOA was originally a named Defendant in this matter, but was dismissed from this case. (*See* ECF No. 13.)

whether Plaintiff has alleged a cause of action under California Civil Code section 2924.11.

Defendant argues that Plaintiff cannot allege a violation of section 2924.11 because Plaintiff does not allege he was ever approved for a written trial plan or other foreclosure prevention alternative. (ECF No. 4 at 9.) Defendant also asserts that section 2924.11 applies only to deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units, and Plaintiff has alleged that he resides in the subject property. (ECF No. 4 at 9.)

At the outset the Court notes that Plaintiff and Defendant are quoting different versions of California Civil Code section 2924.11. The current version of section 2924.11 (titled "Approval of foreclosure prevention alternative in writing; circumstances prohibiting recordation of notice of default, recording of notice of sale, or conducting trustee's sale; copy of agreement; recording of rescission of notice of default or cancellation of pending trustee's sale; fees; transfer of loan") denotes instances in which a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not file a record notice of default due to a foreclosure prevention alternative being approved in writing. Cal. Civ. Code § 2924.11 (effective Jan. 1. 2013, and operative until Jan. 1, 2018). In contrast, Plaintiff's opposition quotes the language from the version of section 2924.11 (entitled "Submission of complete foreclosure prevention alternative application; prohibition on recording notice of sale or conducting trustee's sale while application is pending; written notice of denial; approval of foreclosure prevention alternative in writing; circumstances prohibiting recordation of notice of default, recording of notice of sale, or conducting trustee's sale") that will become effective on January 1, 2018.[3] That statute reads as follows: "If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending." However, the statute quoted by Plaintiff is inapplicable to Plaintiff's case because it will not replace the current section 2924.11 until

---

[3] The Court notes that the language from the 2018 statute cited by Plaintiff is similar to that of the current California Civil Code section 2924.18.

8

January 2018.

The current version of 2924.11, as referenced by Defendant, states as follows:

(a) **If a foreclosure prevention alternative is approved in writing** prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) **If a foreclosure prevention alternative is approved in writing** after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) **When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative**, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, **upon the borrower executing a permanent foreclosure prevention alternative**. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention

9

alternative is being evaluated or exercised.

(g) **If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative**, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

Cal. Civ. Code § 2924.11 (West 2014) (emphasis added). Thus to succeed under this section, Plaintiff must plead that a foreclosure prevention alternative has been approved in writing. Plaintiff has not pleaded any facts indicating that to be true. In fact, Plaintiff's assertions have been inapposite. Essentially, Plaintiff asserts that Defendant has continuously failed to consider his application by falsely stating that his application is either incomplete or out of date. As such, Plaintiff has not sufficiently pleaded facts to sustain his First Cause of Action.[4]

    *ii.*  *Plaintiff's Second Cause of Action for Fraud*

Defendant argues that Plaintiff has failed to allege his fraud claim with the required specificity under Federal Rule of Civil Procedure 9. (ECF No. 4 at 10.) "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). To establish a claim for fraud, a plaintiff is required to allege facts demonstrating "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the

---

[4] As discussed in the following section, the parties make certain assertions as to a payment plan that was offered by Defendant to Plaintiff after the filing of Plaintiff's motion for preliminary injunction. However, the parties agree that Plaintiff did not agree to the terms and therefore no one has alleged that a foreclosure prevention alternative has been approved in writing.

10

1    misrepresentation; and (5) resulting damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th

2    1545, 1557 (2011). "To satisfy the rule, a plaintiff must allege the "who, what, where, when, and

3    how" of the charged misconduct." *Cordova v. Convergys Corp.*, No. C 11-0333 RS, 2011 WL

4    1753846, at *2 (N.D. Cal. May 9, 2011) (citing *Vess*, 317 F.3d at 1106).

5          The Court is not convinced that Plaintiff's complaint lacks the requisite specificity.

6    Plaintiff's complaint states that he turned in several applications. (ECF No. 1-2 at ¶¶ 20, 25.)

7    Plaintiff further alleges that Defendant promised to participate in the loan modification process

8    (ECF No. 1-2 at ¶ 25), and that while Plaintiff was participating in the loan modification process

9    his home would not be subject to foreclosure. (ECF No. 1-2 at ¶ 26.) These allegations

10   consisting of false representations, are sufficient to meet the fraud element of misrepresentation

11   of a material fact. Plaintiff next alleges that "RCS and BOA knew (the statements) to be false and

12   were actively participating in the foreclosure process, including filing a notice of default, notice

13   of foreclosure and notice of sale." (ECF No. 1-2 at ¶ 26.) Thus, Plaintiff has pleaded the element

14   of knowledge of falsity. As to the third element, intent to deceive and induce reliance, the

15   complaint alleges that "[t]hese promises were made by the defendant[ ] with the intent to induce

16   Plaintiff into believing he was protected from foreclosure." (ECF No. 1-2 at ¶ 27.) Plaintiff also

17   alleges that he was ignorant of Defendant's intentions and relied on Defendant's promises. (ECF

18   No. 1-2 at ¶ 28.) This clearly meets the fourth element, justifiable reliance. Finally, Plaintiff

19   meets the final element of damages because he states that his house is now subject to forcelosure

20   based upon his reliance on Defendants' promises. (ECF No. 1-2 at ¶ 28.) Thus, Plaintiff has met

21   the standard articulated in Federal Rule of Civil Procedure 9.

22         The Court notes that in Defendant's reply, Defendant asserts that it offered Plaintiff a loan

23   modification on July 23, 2014, and that Plaintiff rejected it. (Def's Reply, ECF No. 21 at 2.) At

24   this juncture, the Court is required to give Plaintiff the benefit of every reasonable inference to be

25   drawn from the allegations of the complaint. *See Retail Clerks Int'l Ass'n*, 373 U.S. at 753 n.6.

26   Moreover, in Plaintiff's reply brief in support of his motion for preliminary injunction, Plaintiff

27   confirms that after he filed for preliminary injunction in this Court that Defendant offered a Trial

28   Payment Plan ("TPP"):

> On July 17, 2014, a copy of Plaintiff's moving papers on the current motion were mailed to RCS's legal counsel. On July 23, 2014, six days after the mailing of the motion, RCS sent a Trial Period Plan ("TPP") to Plaintiffs attorney. (A copy TPP is attached to the declaration of Dustin J. Dyer as Exhibit 4). It is no coincidence that the TPP was sent after the filing of this motion and is now the crux of RCS's defense against the motion. Noticeably absent from RCS's TPP was the following: 1) any guarantee or agreement that if Plaintiff completed the terms of the TPP that a loan modification would be offered to Plaintiff; 2) Any statement or acknowledgement that the payments outlined in the TPP would be applied to any subsequent loan modification offered to Plaintiff; and 3) Any language about the terms of a loan moditication that would be offered to Plaintiff. Additionally, the TPP required Plaintiff to waive all of his rights in order to fight a foreclosure on his property.
>
> Given the clearly one sided language of the TPP which requires Plaintiff to waive his rights and make payments with no idea whether he is going to receive a loan modification or what the terms may be, Plaintiff was forced to reject RCS's offer. Eight days after Plaintiff's rejection Defendants tile [sic] their opposition to the present motion which relies almost exclusively on their TPP.

(ECF No. 23 at 4.) The Court does not look kindly upon Defendant's posture in this situation. However, this Order is not the correct forum to discuss Defendant's alleged tactics. Based on the facts alleged in the Complaint, Plaintiff has adequately pleaded fraud and Defendant's after the fact offer does not negate this. As such, Defendant's motion to dismiss Plaintiff's Second Cause of Action is DENIED.

B. <u>Preliminary Injunction</u>

As referenced above, in order to obtain a preliminary injunction, Plaintiff must establish that he is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. This Court will address each of these requirements in turn.

*i. Likelihood of Success*

Plaintiff has the burden to show that he is likely to succeed on his claims against Defendant. To succeed he must show that Defendant either violated California Civil Code

1 section 2924.11 or made fraudulent representations. As discussed above,[5] Plaintiff cannot
2 maintain an action for violation of section 2924.11 as pleaded. Thus, for the purpose of this
3 analysis, the Court is restricted to Plaintiff's fraud claim.
4       The gravamen of Plaintiff's fraud claim is that Defendant told Plaintiff that the pending
5 foreclosure on his home was stayed because he had submitted a modification application.
6 Plaintiff relied on these statements because he had submitted a complete application which did
7 nothing to stop the foreclosure process that continued to move forward. In its opposition,
8 Defendant unavailingly tries to characterize Plaintiff's claim as involving Defendant's untimely
9 realization that Plaintiff's application was complete. This argument is relevant to Plaintiff's First
10 Cause of Action that has been dismissed, but is not availing as to Plaintiff's fraud claim. That
11 being said, this Court finds that Plaintiff's likelihood of success on his fraud claim is not
12 overwhelming, but possible. *See Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997)
13 ("even a plaintiff who does not have a very high probability of ultimately prevailing will be
14 entitled to preliminary relief if he faces very great irreparable harm and the defendant very
15 little"). Thus, this factor is neutral, and the Court turns to the other factors.
16       *ii.    Irreparable Harm*
17     "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable
18 injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th
19 Cir. 2009) (quoting *Winter*, 555 U.S. at 22). Plaintiff is asking for injunctive relief to stop the
20 foreclosure of his home. In Plaintiffs' motion, he contends that if RCS is permitted to sell his
21 property prior to resolution of the case that he would be without adequate compensation for his
22 damages if successful at trial. The Court agrees. Thus, this factor weighs in favor of enjoining
23 Defendant from foreclosing on the property.
24       *iii.    Balance of Equities*
25     "The purpose of preliminary injunctive relief is to preserve the status quo if the balance of
26 equities so heavily favors the moving party that justice requires the court to intervene to secure
27 the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank*

---

[5] *See supra,* Section III(A)(i).

*Nat. Ass'n*, No. CV F 13-1121 LJO MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013) (citing *Univ. of Tex v. Camenisch*, 451 U.S. 390, 395 (1981)).  Here, Plaintiff alleges that Defendant has acted fraudulently.  The Court finds that if such facts are true, Defendant should not benefit from its actions by being allowed to foreclose on the property.  Furthermore, the Court is not swayed by Defendant's argument that their subsequent TPP offer which requires Plaintiff to waive any rights to any foreclosure proceedings, and Plaintiff's denial of the offer, prevents him from arguing that he would suffer hardship if injunctive relief is not granted.  The degree of harm that will be suffered by Plaintiff substantially outweighs the injury alleged by Defendant should this Court deny Plaintiff's motion.  Therefore, this factor weighs in favor of granting preliminary injunction.

       *iv.*  *Public Interest*

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376–77 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell–Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, 132 S. Ct. 1204 (2012).  The California Legislature thought that the protection of the rights of homeowners during their loan modification process was significant enough to pass laws to protect those individuals.[6] *See* California Homeowners' Bill of Rights, codified at Cal. Civ. Code §§ 2920.5, 2923.4–.7, 2924, 2924.9–.12, 2924.15, 2924.17–.20.  The public interest favors vindicating the Legislature's intent "to have individual borrowers and lenders 'assess' and 'explore' alternatives to foreclosure." *Magana v. Wells Fargo Bank, N.A.*, No. C 11-03993 CW, 2011 WL 4948674, at *2

---

[6] California's Home Owners Bill of Rights ("HBOR"), which took effect January 1, 2013, reformed aspects of the state's nonjudicial foreclosure process by amending the California Civil Code to prohibit deceptive and abusive home foreclosure practices. *See Foronda v. Wells Fargo Home Mortgage, Inc.*, No. 14-CV-03513-LHK, 2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014); *Johnson v. PNC Mortgage*, No. C 14-02976 LB, 2014 WL 6629585, at *7 (N.D. Cal. Nov. 21, 2014); *Flores v. Nationstar Mortg. LLC*, No. CV 13–3898–PLA, 2014 WL 304766, at *3 (C.D. Cal. Jan. 6, 2014).

(N.D. Cal. Oct. 18, 2011) (quoting *Mabry v. Superior Court*, 185 Cal. App. 4th 201, 223 (2010)). These protections include staying foreclosure proceedings during the time that a mortgage modification application is pending. *See* Cal. Civ. Code § 2924.18 (West 2014). Thus, the Court finds that this factor also weighs in favor of granting Plaintiff's request for injunctive relief.

### IV.    CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.    Defendant's Motion to Dismiss (ECF No. 4) is GRANTED IN PART and DENIED IN PART. Defendant's motion to dismiss Plaintiff's First Cause of Action for Injunctive relief is GRANTED. Defendant's motion to dismiss Plaintiff's Second Cause of Action for Fraud is DENIED. Should Plaintiff wish to amend his First Cause of Action, he is granted leave to do so. Any such amendments must be filed in this Court no later than thirty (30) days from the entry of this Order.

2.    Plaintiff's Motion for Preliminary Injunction (ECF No. 17) is hereby GRANTED.

IT IS SO ORDERED.

Dated:  January 30, 2015

Troy L. Nunley
United States District Judge