UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD MORRIS,<br><br>            Plaintiff,<br><br>   v.<br><br>RESIDENTIAL CREDIT SOLUTIONS, INC,<br><br>            Defendant. | No. 2:14-cv-01460-TLN-CKD<br><br>**ORDER** |

This matter is before the Court pursuant to Plaintiff Chad Morris's ("Plaintiff") Motion for Attorneys' Fees. (ECF No. 32.) Defendant Residential Credit Solutions, Inc. ("Defendant") has filed an opposition[1] (ECF No. 32), to which Plaintiff has replied (ECF No. 36). The Court has carefully considered the briefing submitted by both parties. For the reasons set forth below, Plaintiff's motion is hereby DENIED WITHOUT PREJUDICE.

    I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On or about August 16, 2005, Plaintiff purchased the property located at 21 Riverscape

---

[1] Defendant requests that the Court take judicial notice of this Court's Order in this matter dated February 2, 2015 (ECF No. 25), as well as Plaintiff's Motion for Injunctive Relief (ECF No. 17), Plaintiff's Complaint (ECF No. 1-2), and Defendant's Opposition to Plaintiff's Motion for Injunctive Relief (ECF No. 22). (Req. for Jud. Not., ECF No. 34.) The Court may take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). These documents are a matter of public record; "matters of public record, including publicly recorded documents, are appropriate for judicial notice pursuant to Federal Rule of Evidence 201." Therefore, Defendant's request is GRANTED.

1

1  Court, in Sacramento, California.  (Compl., ECF No. 1-2 at ¶ 6.)  The purchase price of the
2  property was $519,000.  (ECF No. 1-2 at ¶ 6.)  Plaintiff invested $51,900 as a down payment on
3  the property and took out a first mortgage for $415,200 with Countrywide Financial.  (ECF No. 1-
4  2 at ¶ 6.)  Additionally, Plaintiff took out a second mortgage for $51,900 with Countrywide
5  Financial.  (ECF No. 1-2 at ¶ 6.)  Plaintiff alleges that he made complete and timely mortgage
6  payments each month for the first seven years of his mortgages.  (ECF No. 1-2 at ¶ 7.)

7      In 2008, Countrywide Financial was purchased by Bank of America ("BOA") and
8  Plaintiff's mortgage and deed of trust were transferred to BOA.  (ECF No. 1-2 at ¶ 9.)
9  Throughout this period, Plaintiff continued to make complete and timely mortgage payments.
10 (ECF No. 1-2 at ¶ 9.)  Throughout 2011 and 2012, Plaintiff attempted to receive a loan
11 modification from BOA, but was unable to receive the required information to complete the
12 process.  (ECF No. 1-2 at ¶ 10.)  In 2013, Plaintiff fell behind on his mortgage payments.  (ECF
13 No. 1-2 at ¶ 11.)  Afterwards, Plaintiff again began the loan modification process with BOA.
14 (ECF No. 1-2 at ¶ 11.)

15     After months of negotiating a loan modification with BOA, on or about May 28 2013,
16 Plaintiff received a letter from BOA stating that RCS had taken over the servicing rights on
17 Plaintiff's home loan.  (ECF No. 1-2 at ¶ 12.)  On or about July 16, 2013, Plaintiff received a
18 letter from RCS stating RCS's loan modification process and indicating that Plaintiff would have
19 to start over in his search for a home loan modification.  (ECF No. 1-2 at ¶ 13.)  From July of
20 2013 through February of 2014, Plaintiff attempted to acquire a home loan modification from
21 RCS.  (ECF No. 1-2 at ¶ 14.)  In doing so, Plaintiff was required to provide the same information
22 several times to RCS.  (ECF No. 1-2 at ¶ 14.)  Plaintiff alleges that once he provided the
23 information RCS would claim that the information that they had already received was out of date
24 and needed to be updated.  (ECF No. 1-2 at ¶ 14.)  Plaintiff would then send all the information
25 requested, and RCS would state that it needed additional information that was not previously
26 requested.  (ECF No. 1-2 at ¶ 14.)  Once the information was again provided, RCS would once
27 again assert that the information previously provided was out of date and needed to be resent.
28 (ECF No. 1-2 at ¶ 14.)  During this period, Plaintiff had multiple points of contact.  (ECF No. 1-2

1    at ¶ 14.)  Each new point of contact was unfamiliar with Plaintiff's loan and his numerous
2    attempts to achieve a loan modification.  (ECF No. 1-2 at ¶ 14.)
3        On or about February 26, 2014, Plaintiff received a notice of default from RCS.  (ECF No.
4    1-2 at ¶ 15.)  Plaintiff immediately contacted RCS to discuss this matter.  (ECF No. 1-2 at ¶ 15.)
5    Once again, Plaintiff was given a new point of contact and was told that the notice of default was
6    simply a formality and as long as Plaintiff continued with the loan modification process no further
7    action would be taken.  (ECF No. 1-2 at ¶ 15.)  Plaintiff continued to provide RCS all the
8    information requested in hopes of achieving a loan modification.  (ECF No. 1-2 at ¶ 15.)  Each
9    time Plaintiff sent information RCS would either state it needed new information or state that they
10   already received information that was old and needed to be updated.  (ECF No. 1-2 at ¶ 15.)  At
11   no point during Plaintiff's almost daily discussions with RCS was he informed that a foreclosure
12   was being sought.  (ECF No. 1-2 at ¶ 15.)
13       On May 28, 2014, Plaintiff received a notice of foreclosure at his residence.  (ECF No. 1-
14   2 at ¶ 16.)  The date of sale was scheduled for June 18, 2014, at 2:00 pm.  (ECF No. 1-2 at ¶ 16.)
15   Plaintiff again contacted RCS.  (ECF No. 1-2 at ¶ 16.)  Once again, RCS stated that this was
16   simply a procedural step and that they would continue to work on getting a loan modification for
17   Plaintiff.  (ECF No. 1-2 at ¶ 16.)
18       On June 4, 2014, Plaintiff filed a complaint for injunctive relief and damages alleging
19   violations of California Civil Code sections 2923 and 2924, fraudulent mortgage practices and
20   punitive damages.  (ECF No. 1-2.)  On June 10, 2014, Plaintiff sought an ex parte application for
21   temporary restraining order and preliminary injunction in Sacramento County Superior Court.
22   (ECF No. 1-3.)  At the hearing Judge Raymond Cadei granted Plaintiffs temporary restraining
23   order and set a hearing regarding a preliminary injunction.  (ECF No. 1-4.)  On June 18, 2014,
24   Defendant removed this case to federal court and subsequently filed a motion to dismiss on June
25   25, 2014.  (ECF No. 4.)  Plaintiff filed a motion for preliminary injunction on July 21, 2014.
26   (ECF No. 17.)
27       On February 5, 2015, this Court granted in part and denied in part Defendant's Motion to
28   Dismiss.  (ECF No. 25.)  Specifically, the Court granted Defendant's motion to dismiss Plaintiff's

1  First Cause of Action for Injunctive relief and denied Defendant's motion to dismiss Plaintiff's
2  Second Cause of Action for Fraud.  (ECF No. 25.)  The Court found that Plaintiff's First Cause of
3  Action, entitled injunctive relief, was in fact for violations of the Consumer Financial Protection
4  Bureau Act of 2010 and California Civil Code §2924.11 and that the remedy sought was
5  injunctive relief.  (ECF No. 25 at 7.)  The Court determined that Plaintiff had not alleged a
6  violation of Cal. Civ. Code § 2924.11 because Plaintiff did not plead that a foreclosure prevention
7  alternative had been approved in writing, as required under this section of the statute.  Thus, the
8  Court dismissed Plaintiff's First Cause of Action, but granted leave to amend.  (ECF No. 25 at
9  15.)

10  As to Plaintiff's Second Cause of Action, Fraud, the Court found that Plaintiff had
11  sufficiently pleaded fraud and determined that Plaintiff had met his burden for preliminary
12  injunctive relief pursuant to Plaintiff's fraud allegations.  (ECF No. 25.)  Thus, the Court granted
13  Plaintiff's request for injunctive relief.

14  On February 23, 2016, Plaintiff filed the instant motion for attorney's fees based on the
15  Third District Court of Appeal of California's ruling in *Monterossa v. Superior Court*, 237 Cal.
16  App. 4th 747, 749 (2015), which held that a borrower who obtains a preliminary injunction
17  enjoining the trustee's sale of his or her home is a "prevailing borrower" within the meaning of
18  section 2924.12 and may recover attorney's fees.  (ECF No. 32.)

19  **II.    STANDARD OF LAW**

20  In an action involving a substantive question of state law, federal courts apply the forum
21  state's law to determine whether a party is entitled to an award of attorneys' fees.  *MRO*
22  *Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999).  Under California
23  law, the court may award reasonable attorneys' fees and costs to a "prevailing borrower" in an
24  action challenging a foreclosure.  *See* Cal. Civ. Code § 2924.12(i); *Monterossa*, 237 Cal. App. 4th
25  at, 753, 757.  A borrower is deemed to have "prevailed" if he or she "obtained injunctive relief or
26  was awarded damages." Cal. Civ. Code § 2924.12(i).

27  When state law allows for an award of attorneys' fees, it also supplies the method of fee
28  calculation.  *See Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995).

1   Under California law, a reasonable attorneys' fee is calculated based on a lodestar figure, the
2   product of all hours reasonably spent and a reasonable hourly rate. *Ketchum v. Moses*, 24 Cal. 4th
3   1122, 1131–32 (2001). Courts should avoid awarding compensation for inefficient and
4   duplicative efforts. *Id.* at 1132. A reasonable hourly rate is the rate prevailing in the relevant
5   community. *Id.* This lodestar fee may be adjusted to account for "(1) the novelty and difficulty
6   of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the
7   nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of
8   the fee award." *Id.* The court's goal is to approximate the market value of the attorneys'
9   services. *Id.*

**III.   ANALYSIS**

11   Defendant presents four arguments in opposition to Plaintiff's motion for attorneys' fees:
12   (1) *Monterossa* is not applicable because Plaintiff did not bring an action under § 2924.12; (2)
13   *Monterossa* cannot be applied retroactively; (3) Plaintiff is foreclosed from moving for attorneys'
14   fees because he failed to request such an award in his motion for injunctive relief; and (4) the late
15   request for attorneys' fees does not constitute excusable neglect under Federal Rule of Civil
16   Procedure 6(b)(2). Additionally, Defendant asserts that the amount sought by Plaintiff is
17   unreasonable. The Court addresses each argument in turn.

A. *Monterossa's* Applicability to the Instant Action

19   Defendant asserts that the award of fees in *Monterossa* was based on allegations of
20   violation of § 2923.12, and "the only mention of an alleged violation of HOBR is plaintiff's claim
21   of a violation of CC §2924.11 which, as this Court pointed out in its Order of 2/2/2015, is not
22   applicable to this fact situation, because plaintiff was quoting from a statute that does not go into
23   effect until 2018." (ECF No. 33 at 3.) In response, Plaintiff asserts that the *Monterossa* court
24   held "the legislative history demonstrates unequivocally that the Legislature intended to authorize
25   an award of attorney fees and costs when a trial court grants a preliminary injunction as a result of
26   a lender's violation of sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."
27   (ECF No. 36 at 2.) Thus, Plaintiff concludes that his claims are within the purview of
28   § 2924.12. This Court agrees.

In *Monterossa*, the court stated:

> the prohibition against dual tracking is given teeth by section 2924.12, which provides remedies for a violation of section 2923.6 or other specified provisions of the statutory scheme. The remedies are different, depending on whether a trustee's deed upon sale has been recorded. "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."

*Monterossa*, 237 Cal. App. 4th at 753 (quoting Cal. Civ. Code § 2924.12(a)(1) (West)). Here, Plaintiff's fraud claim is predicated on Plaintiff's allegations that Defendant illegally had multiple points of contact to help perpetuate their fraud, in violation of § 2923.7. *See* Cal. Civ. Code § 2923.7 (West) (requiring that once a borrower requests a foreclosure prevention alternative the mortgage servicer "shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact" for the purposes of completing and evaluating a modification application). Additionally, Plaintiff argued that he provided all requested materials sought by RCS for a loan modification and RCS failed to acknowledge receipt of a complete application, in violation of § 2924.10. *See* Cal. Civ. Code § 2923.7 (West) ("When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."). In obtaining a preliminary injunction, the Court acknowledged the viability of Plaintiff's fraud cause of action which includes allegations of misrepresentations made by numerous points of contact:

> Plaintiff further alleges that Defendant promised to participate in the loan modification process (ECF No. 1-2 at ¶ 25), and that while Plaintiff was participating in the loan modification process his home would not be subject to foreclosure. (ECF No. 1-2 at ¶ 26.) These allegations consisting of false representations, are sufficient to meet the fraud element of misrepresentation of a material fact. Plaintiff next alleges that "RCS and BOA knew (the statements) to be false and were actively participating in the foreclosure process, including filing a notice of default, notice of foreclosure and notice of sale." (ECF No. 1-2 at ¶ 26.) Thus, Plaintiff has pleaded the element of knowledge of falsity. As to the third element, intent to deceive and induce reliance, the complaint alleges that "[t]hese promises were made by the defendant[ ] with the intent to induce

6

>Plaintiff into believing he was protected from foreclosure." (ECF No. 1-2 at ¶ 27.)  Plaintiff also alleges that he was ignorant of Defendant's intentions and relied on Defendant's promises. (ECF No. 1-2 at ¶ 28.)  This clearly meets the fourth element, justifiable reliance. Finally, Plaintiff meets the final element of damages because he states that his house is now subject to foreclosure based upon his reliance on Defendants' promises. (ECF No. 1-2 at ¶ 28.) Thus, Plaintiff has met the standard articulated in Federal Rule of Civil Procedure 9.

(ECF No. 25 at 11.)[2]  Thus, the Court finds that Plaintiff's fraud claim is predicated on the above HBOR violations of sections 2923.7 and 2924.10, which are specifically enumerated in § 2923.12 as being included within the meaning of the section.  Accordingly, Defendant's argument is not persuasive.

> B.  *Monterossa's* Alleged Retroactive Application

Defendant argues that Plaintiff is attempting to retroactively apply the holding in *Monterossa* which was decided after the Plaintiff's motion for injunctive relief. (ECF No. 33 at 4.)  Plaintiff contends that Defendant's argument misinterprets the use of the term retroactive and how it applies to HBOR. (ECF No. 36 at 3.)  Again, this Court agrees.

Defendant cites the case *Andre v. Bank of Am., N.A.*, No. 5:14-cv-02888-PSG, 2014 U.S. Dist. LEXIS 168978, *11 (N.D. Cal. Dec. 5, 2014), for the proposition that *Monterossa* cannot be applied to the instant case.  In *Andre*, the court held that HBOR infractions that occurred prior to the day HBOR became law, January 1, 2013, could not sustain a cause of action because HBOR does not apply retroactively.  *Andre* in no way applies to the instant case since the alleged facts occurred in 2014 after HBOR's effective date.  Moreover, *Monterossa* did not create new law, but instead interpreted the legislation that existed.  In fact, nothing would have precluded Plaintiff from bringing a motion for attorneys' fees at the time this Court granted injunctive relief.  Thus, the Court turns to Defendant's next argument.

///

---

[2]  *See also* Compl., ECF No. 1-2 at ¶¶ 12–16 ("Once again Plaintiff was given a new point of contact and was told that the notice of default was simply a formality and as long as Plaintiff continues with the loan modification process no further action would be taken.  Plaintiff then continued to provide RCS all the information requested in hopes of achieving a loan modification.  Each time Plaintiff sent in information, RCS would either state it needed new information or state that they already received information that was old and needed to be updated.  At no point during Plaintiff s almost daily discussions with RCS was he informed that a foreclosure was being sought.")

    C.  <u>Plaintiff's Failure to Pursue Attorneys' Fees within His Motion for Injunctive Relief</u>

Defendant claims that Plaintiff is foreclosed from moving for attorneys' fees because he did not request them in his motion for injunctive relief: "It is black letter law that a party is entitled to due process at all stages of a legal proceeding, which includes notice of all claims brought against him. This axiom applies to motions such as the one plaintiff filed on 7/21/2014, plaintiff's Motion for a Preliminary Injunction [Doc. #17.]" (ECF No. 33 at 5–6.)

Interestingly enough, Defendant does not supply this Court with any "black letter law" in support of its motion. The Court is not aware of any California state law or any Federal law requiring a party to seek attorneys' fees within a motion for injunctive relief in order to successfully file a motion for fees. Moreover, Federal Rule of Civil Procedure 54(d)(2) states only that "[a] claim for attorneys' fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The rule does not state that the fees must be requested within the motion that the party prevailed upon.

Defendant next argues that the motion for attorneys' fees is not timely and should not be excused as "excusable neglect" under Federal Rule of Civil Procedure 6. (ECF No. 33 at 5.) Plaintiff seems to agree that the motion should have been filed within the fourteen day time period articulated by Federal Rule of Civil Procedure 54(d)(2)(B):

> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
>
> (i) be filed no later than 14 days after the entry of judgment;
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

However, Plaintiff asserts that failing to do so is excusable neglect.

Although, the parties seem to agree that the rule requires fourteen days from the entry of the judgment, they do not distinguish between the Court's Order, granting injunctive relief, and

an order granting final judgment. The 1993 Amendment Notes of the Advisory Committee on Rules explains that the term judgment as referenced in Rule 54(d) applies to the final disposing of the case on the merits:

> Subparagraph (B) provides a deadline for motions for attorneys' fees—14 days after **final judgment** unless the court or a statute specifies some other time. One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed. Prior law did not prescribe any specific time limit on claims for attorneys' fees. *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445 (1982). In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case.

(emphasis added). Here, the merits of Plaintiff's case have not yet been decided. The Court has only made the determination that there is a likelihood of success based on Plaintiff's allegations which have yet to have been proven. Although section 2924.12 provides for recovery of attorneys' fees based on obtaining preliminary injunctive relief, it does not specify that the party must seek fees immediately upon obtaining such relief. Section (i) states: "A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section." The section allows for recovery on fees where injunctive relief is obtained AND where damages are awarded. Here, there has not been a determination as to damages. Thus, assessing fees at this time is premature. To avoid piecemeal litigation of attorneys' fees in this matter, the Court finds that it would be more prudent to assess fees at the final judgment of this case which is yet to be rendered.

In light of the Court's ruling, assessment of the reasonableness of Plaintiff's attorneys' fees is inappropriate at this time.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees (ECF No. 32) is hereby DENIED. Plaintiff is welcome to file an amended motion within fourteen (14) days of the entry of final judgment in this matter.

///

IT IS SO ORDERED.

Dated: August 1, 2016

_____
Troy L. Nunley
United States District Judge